Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1394 | **DATE** | 7/28/2000 |
| **CASE TITLE** | St. Croix of Park Falls vs. Maurice Sporting Goods, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant's motion for preliminary injunction is denied. The case is set for a status hearing on 8/17/00 at 9:30 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 31 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | OMJ docketing deputy initials | 20 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | JUL 31 2000 date mailed notice | |
| OR | courtroom deputy's initials | 00 JUL 30 PM 1:06 Date/time received in central Clerk's Office | OMJ mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ST. CROIX OF PARK FALLS, LTD., | ) |
| Plaintiff / Counter-defendant, | ) |
| vs. | ) Case No. 00 C 1394 |
| MAURICE SPORTING GOODS, INC. and SOUTH BEND SPORTING GOODS, INC., | ) |
| Defendants / Counter-plaintiffs. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff St. Croix of Park Falls, Ltd. filed this action against defendants Maurice Sporting Goods, Inc. and South Bend Sporting Goods, Inc., seeking a declaratory judgment that St. Croix's use of the trademark LEGEND ELITE in connection with fishing rods does not infringe defendants' mark ELITE, which Maurice has registered for use in connection with fishing reels. Defendants filed a counterclaim for infringement, alleging that St. Croix's use of LEGEND ELITE and the mark BEN DOERR ELITE infringes defendants' mark. They also filed a motion for a preliminary injunction. Both parties took discovery in connection with the preliminary injunction motion, and though they submitted extensive evidence in support of their respective positions, they agreed that there was no need for the Court to hold an evidentiary hearing. Based on the Court's consideration of the materials submitted by both sides, as well as oral argument held on July 10, 2000, the Court denies defendants' motion for preliminary injunction.

# FACTS

Maurice owns federal trademark registration no. 1,594,427, issued on May 1, 1990, for the trademark ELITE for use in connection with fishing reels. South Bend, a wholly owned subsidiary of Maurice, has used the trademark ELITE in connection with fishing reels since May 1989. South Bend markets and sells ELITE fishing reels, ELITE fishing rods, and ELITE rod-reel combinations along with other fishing equipment and sporting goods products. It markets its ELITE fishing products via the Internet, catalogs, retail stores, trade shows, and other channels of commerce; it sells the vast majority of its reels and rods through mass merchandise retail outlets, such as K-Mart, Wal-Mart, and Target. South Bend's ELITE reels retail for between $20 and $40. Its rod-reel combinations retail for between $30 and $60. It includes its South Bend mark on all products bearing the ELITE mark. *See* Appendix 1.

St. Croix has been manufacturing fishing rods since 1948 and is the largest full-line United States manufacturer of fishing rods. It is known as a supplier of premium-priced rods; it does not sell reels. Like South Bend, St. Croix sells its products via the Internet, catalogs, retails stores, trade shows, and other channels of commerce. On the retail store level, it sells its products to independent fishing and hunting stores and specialized sporting goods chains, and not to mass merchandisers such as Sears, K-Mart, or Wal-Mart. It uses its house mark "St. Croix" on all its products and promotions.

In 1987, St. Croix introduced its LEGEND series of fishing rods. The product was very successful for St. Croix. In 1998, it began to develop a new "high-performance" rod and chose the name LEGEND ELITE for the new rods. It did this because the name suggested an improvement on the LEGEND series. The retail price of LEGEND ELITE rods is around $300,

and the rods are marketed to serious fishermen.

In 1990, Ben Doerr, a famous surf fishing guide, approached St. Croix with the idea of marketing a series of high-performance surf fishing rods. St. Croix agreed and designed the rods to Doerr's specifications and then began marketing the rods under the name BEN DOERR SURF SYSTEM. In 1997, Doerr suggested developing an improved version of the rods; he suggested the name BEN DOERR ELITE to signal that the rods were an improvement over the earlier series. St. Croix introduced the new rods to the market in the fall of 1998; they are marketed to serious surf fishermen and have a retail price from $240 to $300.

There is some overlap in the retailers who sell the parties' fishing products. All six of the retailers that St. Croix identifies as its major customers (Gander Mountain, Cabela's, Galyan's Trading Company, Bass Pro Shops, Ed Shirley Sports, and Dick's Clothing and Sporting Goods) also carry Maurice and South Bend fishing products. However, only one retailer (Ed Shirley Sports), carries both St. Croix's LEGEND ELITE and BEN DOERR ELITE rods and South Bend's ELITE fishing products.

The term "elite" is used extensively on a wide range of sporting goods products generally and fishing products specifically. It is also used extensively in other areas; the term "elite" appears in some 369 federally registered marks.

St. Croix first used the LEGEND ELITE mark in commerce in September 1999. On October 19, 1999, the Patent and Trademark Office published an intent-to-use application by St. Croix to register LEGEND ELITE for use in connection with fishing rods. Maurice and South Bend filed an opposition to St. Croix's application. They claim that in January 2000, they learned for the first time that St. Croix was exhibiting LEGEND ELITE fishing rods and sales

3

literature at a trade show. They sent St. Croix a cease-and-desist letter on February 22, 2000. St. Croix filed this action on March 7, 2000. In their counterclaim, defendants asserted claims under the Lanham Act for trademark infringement and unfair competition, and under the federal and Illinois anti-dilution statutes.

## DISCUSSION

### A. Trademark infringement and unfair competition claims

A party seeking a preliminary injunction must first establish some likelihood of prevailing on the merits of its case and an inadequate remedy at law and irreparable harm if an injunction is not issued. *E.g., Meridian Mutual Insurance Co. v. Meridian Insurance Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997). If the movant makes that showing, the Court must balance the hardships to the parties stemming from the granting or denial of a preliminary injunction and evaluate the effect of the ruling on non-parties. *Id.*

A likelihood of success exists if the party seeking injunctive relief shows that it has a better than negligible chance of succeeding on the merits. *Id.; see also International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988). In a case alleging trademark infringement or unfair competition, the movant satisfies this requirement by establishing that it has a protectible trademark and that there is a likelihood of confusion between the parties' marks or products. *Meridian*, 128 F.3d at 1115.

It is undisputed that Maurice and South Bend own a federal registration for ELITE on fishing reels. This serves as *prima facie* evidence of their ownership of the mark and its validity. *Avent America, Inc. v. Playtex Products, Inc.*, 68 F. Supp. 2d 920, 924 (N.D. Ill. 1999). Thus in this case, the Court need only address the issue of likelihood of confusion to determine whether

4

Maurice and South Bend have shown a likelihood of success on the merits. *Meridian*, 128 F.3d at 1115.

A court considers a number of factors in determining if a likelihood of confusion exists. These include: 1) the degree of similarity between the parties' marks in appearance and suggestion; 2) the similarity of the products on which the marks are used; 3) the area and manner of concurrent use; 4) the degree of care likely to be used by consumers; 5) the strength of the movant's mark; 6) any evidence of actual confusion; and 7) any evidence of the non-moving party's intent to palm off its products as those of the movant. *E.g., Meridian*, 128 F.3d at 1115; *Avent*, 68 F. Supp. 2d at 925. None of these factors by itself is dispositive of the issue of likelihood of confusion; the weight to be given to each factor varies from case to case. *International Kennel Club*, 846 F.2d at 1087; *see also Meridian*, 128 F.3d at 1115.

### 1. Similarity of marks

To assess the degree of similarity between the marks, the Court compares the movant's mark with the allegedly infringing mark to see if they are confusingly similar. The comparison is done "'in light of what happens in the marketplace,' not merely by looking at the two marks side-by-side." *Meridian Mutual*, 128 F.3d at 1115 (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976)). The reason for this is that consumers rarely see the products side-by-side. *International Kennel Club*, 846 F.2d at 1088.

Copies of the marks as used on St. Croix's rods are included in Appendix 2 to this decision. What is eye-catching about St. Croix's mark is *not* the word "elite." Rather, St. Croix's own name and logo are overwhelmingly dominant. Unlike in *Meridian Mutual*, in which the allegedly infringing term was the first thing a consumer heard or saw, the term "elite" is

completely subordinated in St. Croix's mark, in terms of its size, positioning, and how it is used - it is clearly used as a modifier (of the "Legend" or "Ben Doerr"), rather than as the exclusive or primary part of the name for the equipment. In short, "elite" is not the salient portion of St. Croix's mark. *Compare Meridian Mutual,* 128 F.3d at 1115. The parties are not, in contrast to *Meridian Mutual,* "using essentially the same mark." *Id.* at 1116.

St. Croix always uses its house mark and the term "Legend" or "Ben Doerr" whenever it uses the term "elite." South Bend likewise uses its house mark, though it is certainly less prominently than St. Croix's use of its house mark. *See* Appendix 1. The use of a house mark tends to reduce the likelihood that consumers will be confused as to the source of the product, particularly where, as here, the house mark is the dominant feature of the allegedly infringing mark and is – at least among consumers of fishing rods – well known. *See, e.g., S Industries, Inc. v. JL Audio, Inc.,* 29 F. Supp. 2d 878, 889 (N.D. Ill. 1998) (citing *Ziebart International Corp. v. After Market Associates,* 802 F.2d 220, 226 (7th Cir. 1986) and other cases).

In sum, the Court does not believe that there is any evidence to support a conclusion that a consumer who saw St. Croix's mark would, upon seeing it, associate it with South Bend or its products. Rather, the evidence is entirely to the contrary. This factor strongly supports St. Croix.

2. **Similarity of products and degree of care exercised by consumers**

We consider the issues of similarity of the products and degree of care exercised by consumers together because they are closely related in this case. "In determining the likelihood of confusion that exists due to the similarity between the parties' products, 'the question is whether the products are the kind the public attributes to a single source.'" *International Kennel*

6

*Club*, 846 F.2d at 109 (quoting *McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1169 (7th Cir. 1986)). Defendants own a trademark registration for ELITE for fishing reels; St. Croix is using the term on its fishing rods. The two products are used together, a factor which weighs significantly in favor of a finding of similarity; without a fishing rod, a reel has no function. *See Second Chance Body Armor, Inc. v. American Body Armor & Equipment, Inc.*, No. 94 C 6178, 1999 WL 608718, at *3 (N.D. Ill. 1999) (Hibbler, J.).

On the other hand, there is a dramatic difference between the prices of the parties' products; St. Croix's rods retail for upwards of $250, while South Bend's rod/reel combinations retail for no more than $60. This difference tends to cut against the likelihood of confusion. *See Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1511 (2d Cir. 1997); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 488 (1st Cir. 1981). In view of the high prices that St. Croix charges for its rods, customers are likely to use great care before purchasing one of its items. In addition, St. Croix targets its fishing rods to serious fisherman, as contrasted with South Bend, which tends to target a broader and more general marketplace. These factors tend to decrease the likelihood of confusion. *See Galaxy Chemical Co. v. BASF Corp.*, No. 89 C 9292, 1989 WL 31043, at *4 (N.D. Ill. Mar. 24, 1989); *GB Electrical, Inc. v. Thomas & Betts Corp.*, No. 95-C-0426, 1995 WL 795660, at *6 (E.D. Wis. 1995). As in *Estee Lauder*, there is "no support for a finding that an appreciable number of ordinarily prudent consumers would likely think" that South Bend, whose *combination* products cost one-fourth or less of what St. Croix's rods cost, is the source of the LEGEND ELITE or BEN DOERR ELITE rods. *Estee Lauder*, 108 F.3d at 1511.

In sum, though the products on which St. Croix uses the term "elite" are complementary

7

to and therefore considered similar to defendants' products, overall these two factors tilt against a finding of likelihood of confusion.

3. **Area and manner of concurrent use**

The concurrent use factor "focuses on the overlap of promotion, distribution and sales of the parties' goods." *S Industries*, 29 F. Supp. 2d at 891. Both products are promoted to consumers through the same channels, in a very broad sense: both parties use retail stores, the Internet, trade shows, and catalogs to promote and sell their products. But most of the parties' products at issue here are sold in retail stores. In that area, though South Bend's "fishing products" are sold to all six of St. Croix's largest customers, its ELITE fishing equipment – which includes the reels as to which Maurice owns a trademark registration – are sold at only one retail outlet at which St. Croix's allegedly infringing products are sold. This relative lack of distributional and sales overlap, and the vast difference in price between the parties' products, counterbalances the fact that marketing is done through the same broad channels. The Court believes that this factor does not tip the overall balance significantly one way or the other.

4. **Strength of the mark**

The term "strength" as applied to trademarks refers to the mark's distinctiveness, "or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *Sands, Taylor & Wood v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992). Defendants have offered no evidence tending to suggest that the ELITE mark has this characteristic. To the contrary, the term "elite," an everyday word signifying that something is of a high quality, is very commonly used as a trademark or part of a trademark. This extensive third-party use tends to weaken the mark. *See Mile High Upholstery Fabric Co. v. General Tire*

8

& *Rubber Co.*, No. 83 C 3200, 1983 WL 51924, 221 U.S.P.Q. 217, 224 (N.D. Ill. 1983) (Marshall, J.); *Knaack Manufacturing Co. v. rally Accessories, Inc.*, 955 F. Supp. 991, 1002-03 (N.D. Ill. 1997) (citing cases). Defendants have offered nothing that gives the Court any reason to believe that a consumer seeing the word "elite" on a fishing rod would associate it with South Bend or Maurice – even if the rod did not carry the prominent house mark used by St. Croix. Though a mark's strength is less important when the conflicting mark is identical and the goods are closely related, *see Sands, Taylor & Wood*, 978 F.12d at 959, *TV Land, L.P. v. Viacom International, Inc.*, 908 F. Supp. 543, 552 (N.D. Ill. 1995), in this case the marks are not identical. In sum, defendants have failed to show that their mark is strong.

### 5. Actual confusion

Defendants have offered no evidence of actual confusion. They are not required to do so at this stage, but if they had, it would be entitled to significant weight. *See International Kennel Club*, 846 F.2d at 1090.

### 6. St. Croix's intent

If defendants could show that St. Croix intended to confuse consumers by its use of the word "elite," it would count heavily in their favor. *See generally Meridian*, 128 F.3d at 1120. But they have offered no evidence that St. Croix intended to confuse consumers about who had made its fishing rods. Indeed, it would be difficult to understand why St. Croix, which markets its fishing rods as top-of-the-line products, would want to palm them off as having been made by South Bend, which, at least at the retail store level, markets its products largely through stores that appeal to the mass market.

9

### 7. Conclusion

Defendants have failed to convince the Court that they have any likelihood of success on the merits of their infringement claim. Their mark is relatively weak; St. Croix's mark is dominated by its house mark, and the word "elite" is anything but prominent; and the significant price differential between the parties' products strongly indicates that consumers will take significant care before they purchase a St. Croix rod and thus are not likely to be confused about its origin. For these and the other reasons stated above, the Court concludes that defendants have failed to demonstrate that consumer confusion is likely.

### B. Anti-dilution claims

To prevail on their dilution claim, Maurice and South Bend would have to show that they own a famous mark and that plaintiff's use of "elite" has caused or would cause dilution of the distinctive quality of the mark. *See* 15 U.S.C. §1125(c)(1); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999). The Court strongly doubts that defendants' ELITE mark qualifies as famous under the anti-dilution statute, either generally or in the narrow market of fishing tackle – certainly defendants have not offered evidence tending to show that the ELITE mark is famous. But even if they had done so, defendants have failed to show that dilution has occurred or is likely as a result of St. Croix's use of the word "elite" in its marks. "Dilution" means "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of – (1) competition between the owner of the famous mark and the other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. §1127. Marks that tend to suggest qualities of the product "possess a low level of distinctiveness," making dilution within the meaning of the statute less likely. *See Nabisco, Inc.*

10

*v. PF Brands, Inc.*, 191 F.3d 208, 215-16 (2d Cir. 1999). In view of the Court's prior discussion of the extensive third-party use of the mark, St. Croix's prominent use of its house mark, and the fact that "elite" is nowhere near being the dominant part of St. Croix's mark, dilution of defendants' mark is not likely to occur here. *See generally Mile High*, 221 U.S.P.Q. at 226 (claim under Illinois' anti-dilution statute; "[a] latecomer to such a well-worn mark cannot be heard to claim that another later user of the already watered down mark has 'diluted' the mark"). Defendants have not shown a likelihood of success on either their state or the federal anti-dilution claim.

## CONCLUSION

Maurice and South Bend have failed to establish any likelihood of success on the merits of their claims. For this reason, the Court need not address the remaining elements involved in the determination of their preliminary injunction motion. *See, e.g., Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 730 (7th Cir. 1998). Defendants' motion for preliminary injunction is denied. The case is set for a status hearing on August 17, 2000 at 9:30 a.m.

Date: July 28, 2000

MATTHEW F. KENNELLY
United States District Judge

# APPENDIX 1



South Bend *Elite* 900A

Super Ultralight
**SPINNING REEL**
EXTRA SPOOL
INCLUDED





# APPENDIX 2

# ST.CROIX ROD

## LEGEND ELITE SERIES



6' MEDIUM POWER
FAST ACTION
SC II GRAPHITE
10-17 LB. 1/4-3/4 oz.

ST.CROIX ROD
LEGEND ELITE / EC60MF

SCP002707



## BEN DOERR ELITE SERIES



10' MEDIUM POWER
MOD-FAST ACTION
SC III GRAPHITE
6-20 LB. UP TO 3 oz.

BEN DOERR ELITE / ESS100M

SCP002705